IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA

SHARON TEDESCO, et al.,

      Plaintiffs,

    v.

                         Civil Action No. 1:23-1030

SPOONFLOWER, INC., et al.,

      Defendants.


## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the court is the motion to dismiss of defendants Spoonflower, Inc. ("Spoonflower") and Shutterfly LLC ("Shutterfly") brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure. <u>See</u> ECF No. 16. For the reasons explained below, the motion is **GRANTED**.

### I.   Background

This case arises from defendants' alleged patent infringement. <u>See</u> Compl., ECF No. 1 at ¶ 1.

Plaintiffs Sharon and Marc Tedesco patented an invention called "Fabric Having a Procedure Map," intended to improve the "[a]ccurate measuring, marking, and cutting of fabric . . . for many applications, including upholstery of furniture and the fabrication of garments, draperies linens and quilts." Patent No. 7,310,885, ECF No. 1-1 at 5. According to the patent, the

process had traditionally been done by hand, requiring "careful and repetitive work." See id.

At the time the Tedescos filed the initial patent on December 25, 2007, "[i]n present practice, in order to identify the straight of grain at any point on a conventional fabric, one must either reference the selvedge, and measure and mark the straight of grain at that point, or, if there is no selvedge, find another way of determining the straight-of-grain." Id. A similar process was used for "[i]dentification of other fabric characteristics [like] a nap or lay direction, or the position and repeat of a decorative pattern . . . ." Id.

Because of this tedious process, when the patent was filed, "a significant percentage of sewn items arrive[d] on the market with visible problems resulting from failure to correctly account for fabric characteristics . . . ." Id. According to the patent's "Summary of the Invention," the invention sought to solve this problem by using machines to produce fabrics "having a procedure map thereon, the procedure map comprising at least one set of machine-made markings which identifies one or more of certain fabric characteristics . . . ." Id.

The initial patent contains thirty-two patent "claims." See id. at 7-9. The complaint states that "[a]n example of the pertinent scope of the '885 Patent can be found in claim 24 of the '885 Patent." Compl., ECF No. 1 at ¶ 12. Claim twenty-

2

four, like the "Summery of the Invention," describes the invention as "[a] fabric which has a procedure map thereon, the procedure map comprising at least one set of machine-made markings . . . ." Patent No. 7,310,885, ECF No. 1-1 at 8. Claim twenty-four goes on to describe the various ways in which the markings may appear on the fabrics and the fabric characteristics they may identify. See id.

The Tedescos filed a continuation of the patent on August 12, 2008. See Patent No. 7,409,769, ECF No. 1-2. This patent sets forth twenty claims. See id. The complaint states that "[e]xamples of the pertinent scope of the '769 Patent can be found in claims 6 and 9, and in claims 14 and 20, of the '769 Patent." Compl., ECF No. 1 at ¶ 13. Those claims, like the initial patent, describe the invention as a "fabric having a procedure map thereon . . . ." Patent No. 7,409,769, ECF No. 1-2 at 7-8.

Defendant Spoonflower engages in the custom fabric printing business and is a subsidiary of defendant Shutterfly. See Compl., ECF No. 1 at ¶¶ 2, 4-5. The Tedescos bring this suit against defendants alleging that Spoonflower infringed upon their procedure map patents by selling "products that infringe claims of the Asserted Patents, and using methods that infringe claims of the Asserted Patents, including but not limited to fabrics comprising procedure maps that facilitate the cutting

3

and shaping of fabric for its consumers' projects . . . ." <u>See</u> <u>id</u>. at ¶ 19.

Defendants filed this motion to dismiss, arguing that the procedure map is an "abstract idea" not patentable under 35 U.S.C. § 101. <u>See</u> Mem. Supp. Mot. to Dismiss, ECF No. 17 at 3.

## II. Legal Standard

Although patent appeals are reviewed by the United States Court of Appeals for the Federal Circuit, the regional circuit law determines the standard for motions to dismiss. <u>See</u> <u>Mobile</u> <u>Acuity Ltd. v. Blippar Ltd.</u>, 110 F.4th 1280, 1288 (Fed. Cir. 2024) (citing <u>Hawk Tech. Sys., LLC v. Castle Retail, LLC</u>, 60 F.4th 1349, 1356 (Fed. Cir. 2023)).

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12 (b)(6) motion to dismiss is meant to "test[ ] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).

4

In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted), and all reasonable inferences must be drawn in the non-moving party's favor, see Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997) (citation omitted).

However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotation mark omitted). Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, so as to "nudge[ ] the[ ] claims across the line from conceivable to plausible." Id. at 570. Thus, mere legal conclusions should not be accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

### III. Discussion

Section 101 of the Patent Act defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. An implicit exception applies to this statute: "Laws of nature, natural phenomena,

5

and abstract ideas are not patentable." Alice Corp. Pty., Ltd. v. CLS Bank Int'l, 134 S. Ct. 2347, 2354 (2014) (quoting Ass'n for Molecular Pathology v. Myriad Genetics, Inc., 133 S. Ct. 2107, 2116 (2013)). While abstract ideas are not patentable in and of themselves, they are patentable if applied to "to a new and useful end." Alice, 134 S. Ct. at 2354 (quoting Gottschalk v. Benson, 93 S. Ct. 253 (1972)).

Whether an allegedly abstract idea is patentable turns on a two-step inquiry. First, the court must determine whether the patented claims are directed at abstract ideas. Id. at 2355. If so, the court turns to the second step which asks whether "additional elements 'transform the nature of the claim' into a patent-eligible application." Id. (quoting Mayo Collaborative Servs. v. Prometheus Labs., Inc., 132 S. Ct. 1289, 1297 (2012)). Step two, therefore, "searches for an 'inventive concept' to ensure that in practice, the patent 'amounts to significantly more than a patent upon the ineligible concept itself.'" Id. (cleaned up) (quoting Mayo, 132 S. Ct. at 1294).

Before turning to the two-step analysis, the court must define the scope of the challenged patent claims.

**A.**

Limiting the analysis of a § 101 challenge to representative claims is proper when the claims at issue are "substantially similar and linked to the same" ineligible

6

concept. <u>Mobile Acuity Ltd. v. Blippar Ltd.</u>, 110 F.4th 1280, 1290 (Fed. Cir. 2024) (quoting <u>Cleveland Clinic Found. v. True Health Diagnostics LLC</u>, 859 F.3d 1352, 1360 (Fed. Cir. 2017)). Therefore, a district court "may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative." <u>Id</u>. (quoting <u>Berkheimer v. HP Inc.</u>, 881 F.3d 1360, 1365 (Fed. Cir. 2018)).

When the parties dispute whether claims represent a challenged concept, a burden-shifting framework is triggered.

"The patent challenger who identifies a claim as representative of a group of claims bears the initial burden to make a prima facie showing that the group of claims are 'substantially similar and linked to the same' ineligible concept." <u>Id</u>. (quoting <u>Cleveland Clinic</u>, 859 F.3d at 1360). If the patent challenger makes this prima facie showing, "the burden shifts to the patent owner to present non-frivolous arguments as to why the eligibility of the identified representative claim cannot fairly be treated as decisive of the eligibility of all claims in the group." <u>Id</u>. "The patent owner may, for example, articulate why a claim limitation not found in the representative claim has 'distinctive significance' that

7

would have a material impact on the eligibility analysis." <u>Id</u>.
(quoting <u>Berkheimer</u>, 881 F. 3d at 1365).

In this case defendants deem as representative of the
challenged concept claim twenty-four of the initial patent and
claims six, nine, fourteen, and twenty of the continuation
patent, as those are the claims offered in the complaint as
examples of the alleged invention.  <u>See</u> Mem. Supp. Mot. Dismiss,
ECF No. 17 at 5-9.  Defendants contend that each of these claims
describes a process of "printing and identifying 'procedure
maps' on fabric using a generic 'machine.'"  <u>See</u> <u>id</u>. at 4.

The Tedescos argue that these claims are not representative
of the challenged concept.  They argue that the challenged
claims may relate to other aspects of the invention, such as
claim eighteen of U.S. Patent 7,310,885, which describes a
process by which a machine detects markings on the fabric; claim
twenty-three of that patent, which says that the procedure map
may be woven into the fabric using invisible ink; or claim
twenty-four of U.S. Patent 7,409,769, which requires "the signal
points be a combination of markings that show straight-of-grain
in each of two directions" and also be printed marked in
invisible ink detectable only by machine.  <u>See</u> Response, ECF No.
20 at 17-18.

The Tedescos, therefore, argue that "Defendants are making
uneducated and inaccurate guesses as to the claims that

8

ultimately will be asserted against them . . ." before initial claims must be disclosed under Rule 103.1 of the Middle District of North Carolina's Local Patent Rules and discovery reveals "the hidden processes" used in defendants' factories. See id. Local Rule 103.1 requires plaintiffs to serve upon all defendants a "Disclosure of Asserted Claims and Preliminary Infringement Contentions[,]" which, among other things, contains the claims each defendant allegedly infringed. See Patent L.R. 103.1.

The court disagrees. The allegations of the complaint allege an infringement upon the general idea of a procedure map being printed by a machine to mark and identify fabric characteristics; the Tedescos may not conduct a fishing expedition before determining what additional infringement claims to assert.

As in all civil cases, a complaint alleging patent infringement "must place the alleged infringer 'on notice of what activity . . . is being accused of infringement.'" Lifetime Indus., Inc. v. Trim-Lok, Inc., 869 F.3d 1372, 1379 (Fed. Cir. 2017). Patents are often found invalid at the 12(b)(6) stage:

> Since the Supreme Court decisions in
> both Mayo and Alice, "the rate at which
> patents were found invalid [under § 101]
> increased significantly. From June 2014 to
> February 2017, district courts rendered 157

9

> decisions regarding patent invalidity under
> § 101 at the motion to dismiss stage.  Of
> those 157 decisions, 94 of them, or 60%,
> found the claims invalid.

Wanker v. United States, 146 Fed. Cl. 582, 595 (Fed. Cir. 2020) (cleaned up) (quoting Jeffrey A. Lefstin, Peter S. Menell & David O. Taylor, Final Report of the Berkeley Center for Law & Technology Section 101 Workshop: Addressing Patent Eligibility Challenges, 33 Berkeley Tech. L.J. 551, 576-79 (2018)).

The United States Court of Appeals for the Federal Circuit has "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced."  Trinity Info Media, LLC v. Covalent, Inc., 72 F.4th 1355, 1360-61 (Fed. Cir. 2023) (quoting Cleveland Clinic Found. v. True Health Diagnostics LLC, 859 F.3d 1352, 1360 (Fed. Cir. 2017)).  "A patentee must do more than invoke a generic need for claim construction or discovery to avoid grant of a motion to dismiss under § 101."  Id.  Instead, the patentee must propose a specific claim construction or identify specific facts that need development and explain why those circumstances must be resolved before the scope of the claims can be understood for § 101 purposes.  See id.

The Tedescos have invoked a generic need for discovery and have neither identified specific claim terms that require construction nor facts that need development before

understanding the scope of the challenged claims. Therefore, the court will consider as representative of the challenged concept claims claim twenty-four of the initial patent and claims six, nine, fourteen, and twenty of the continuation patent, as those claims are cited as examples of the protected invention and consistent with the specific allegations of the complaint.

The court will analyze these claims under the two <u>Alice</u> prongs to determine whether the claims seek to protect a patent-ineligible abstract idea.

**B.**

At the first stage, the court "considers the claims at issue 'in their entirety' to determine 'whether their character as a whole' is directed to a law of nature, natural phenomenon, or abstract idea." <u>Internet Patents Corp. v. Active Network, Inc.</u>, 790 F.3d 1343, 1346 (Fed. Cir. 2015). This requires the court to begin "by ascertaining the 'basic character' of the claimed subject matter." <u>Contour IP Holding LLC v. GoPro, Inc.</u>, 113 F.4th 1373, 1379 (Fed. Cir. 2024) (quoting <u>Trinity Info Media, LLC v. Covalent, Inc.</u>, 72 F.4th 1355, 1361 (Fed. Cir. 2023)). In doing so, the court "must avoid describing the claims at a high level of abstraction, divorced from the claim language itself." <u>Id.</u> (quoting <u>Enfish, LLC v. Microsoft Corp.</u>, 822 F.3d 1327, 1337 (Fed. Cir. 2016)).

11

With this delicate balance in mind, the court agrees with defendants' description of the basic character of the claimed subject-matter: A procedure by which fabric characteristics are identified and marked onto fabric by a machine.

Defendants argue that this is an abstract idea because "long before the alleged 'inventions' of the patents, humans routinely identified fabric characteristics such as straight of grain, nap or lay direction, and position and repeat of a decorative pattern, and that humans routinely marked the fabric to indicate these characteristics." Mem. Supp. Mot. Dismiss, ECF No. 17 at 17. The court agrees.

"[C]oncepts that courts have found to be abstract have involved processes that humans can perform without the aid of a computer, such as processes that can be 'done mentally' or using pen and paper." Listingbook, LLC v. Market Leader, Inc., 144 F. Supp. 3d 777, 786 (M.D.N.C. Nov. 13, 2015) (quoting Gottschalk, 93 S. Ct. at 253). "To determine the focus of the claimed advance at Alice step one, we look to whether the claims are directed to 'a specific means or method that improves the relevant technology' rather than simply being directed to 'a result or effect that itself is the abstract idea.'" Contour IP Holding LLC, 113 F.4th at 1379 (quoting McRO, Inc. v. Bandai Namco Games Am. Inc., 837 F.3d 1299, 1314 (Fed. Cir. 2016)).

There are numerous examples of similar concepts being deemed unpatentable abstract ideas.

A patent intended to automate the "previously manual processing of loan applications" is an abstract idea because "mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology[,]" and the "'focus of the claims' is on the method of financing, and the recited generic computer elements 'are invoked merely as a tool.'" Credit Acceptance Corp. v. Westlake Servs., 859 F.3d 1044, 1055 (Fed. Cir. 2017) (quoting Enfish, LLC v. Microsoft Corp., 822 F.3d 1327 (Fed. Cir. 2016)).

A patent aimed at providing a "consistent and repeatable hair cut" which is "achieved through the recited steps of defining a head shape, designating zones, and assigning patterns to zones" is an abstract idea because "[i]dentifying head shape and applying hair designs accordingly is an abstract idea capable . . . of being performed entirely in one's mind." In re Brown, 645 F. App'x 1014, 1016-17 (Fed. Cir. 2016) (per curiam).

A patent that claims a "method for authenticating a user during an electronic transaction" is an abstract idea because the claims are "directed to a common method for solving an old problem[]": "[U]sing a third party and a random, time-sensitive code to confirm the identity of a participant to a transaction."

13

_Asghari-Kamrani v. United Servs. Auto. Ass'n_, No. 2:15cv478, 2016 WL 3670804, at *4 (E.D. Va. July 5, 2016).

The Tedesco's invention is directed at the abstract idea of marking fabrics to identify fabric characteristics. The patents claim to improve upon this process by using a machine to improve the efficiency of the otherwise tedious process. However, the invocation of a generic machine to automate a previously manual process is not inventive; the machine is merely used as a tool. The patents do not describe the machine, and while they do describe elements of patterns that may be printed by the machine, the complaint contains no specific allegations that defendants infringed upon those aspects of the patents.

### c.

"The second step in the analysis requires us to determine whether the claims do significantly more than simply describe that abstract method." _Ultramercial, Inc. v. Hulu, LLC_, 772 F.3d 709, 715 (Fed. Cir. 2014) (citing _Mayo Collaborative Serv. v. Prometheus Lab'ys, Inc._, 132 S. Ct. 1289, 1297 (2012)). The transformation of an abstract idea into patent-eligible subject matter "requires more than simply stat[ing] the [abstract idea] while adding the words 'apply it.'" _Id._ (quoting _Alice_, 134 S. Ct. at 2357). "A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract

14

idea].'" Id. "Those 'additional features' must be more than 'well-understood, routine, conventional activity.'" Id. (quoting Mayo, 132 S. Ct. at 1298).

For instance, "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer [does not] provide a sufficient inventive concept." Intellectual Ventures I LLC v. Capital One Bank, 792 F.3d 1363, 1367 (Fed. Cir. 2015) (citing Bancorp Servs., LLC v. Sun Life Assurance Co. of Can., 687 F.3d 1266, 1278 (Fed. Cir. 2012)). This is because "[w]hen a claim 'abstractly covers results' without regard to a specific process or machinery for achieving those results, it creates preemption concerns because it 'would prohibit all other persons from making the same thing by any means whatsoever.'" Contour IP Holding LLC, 113 F.4th at 1379 (quoting McRO, Inc. v. Bandai Namco Games Am. Inc., 837 F.3d 1299, 1314 (Fed. Cir. 2016)).

The Tedescos' patents do not add an inventive concept to the abstract idea of marking fabric characteristics because the patents do not describe a specific process or machinery for achieving the result. The patents describe the abstract concept and essentially say "apply it" using a non-descript machine. The patents' contention that a machine would make this process more efficient is likely true, but, as noted above, the use of a generic machine adds no inventive concept to the abstract idea.

15

## IV. Conclusion

Based on the foregoing, the asserted claims are patent ineligible subject matter. Accordingly, defendants' motion to dismiss (ECF No. 16) is **GRANTED**.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED** this 26th day of September, 2025.

ENTER:

David A. Faber
Senior United States District Judge